BEFORE THE THIRD DIVISION, JULY 10, 1947

**No. 51841.**—Gildesgame Corp. *v.* United States, petition 6565–R (New York).

CLINE, Judge: This is a petition for remission of additional duties filed under the authority of section 489, Tariff Act of 1930.

The merchandise herein consisted of sample articles of wool knit wearing apparel shipped by Gildesgame Bros. Ltd. of London to Gildesgame Corp., the petitioner herein, a New York corporation. It was invoiced at 44 pounds 7 shillings and 3 pence, entered at $179, and appraised at the invoice unit prices plus 100 percent. Entry was made on September 28, 1945.

The testimony of Leon L. Gildesgame, manager of the New York corporation, Max Taub, customs broker, and James V. Maher, Jr., examiner, may be summarized as follows: About the middle of September 1945, Pierre Gildesgame, brother of Leon L. Gildesgame and managing director of the English company, came to this country, bringing with him certain merchandise which was entered in his baggage declaration. That merchandise was of the same style and character as the merchandise herein, although from a different supplier. Mr. Maher saw the goods when the broker was endeavoring to make a 6-month bond entry, felt that the invoice prices did not represent the values, and put down his own values which were 100 percent higher. Thereafter, the broker brought up a submission sheet in preparation for making a formal entry. Mr. Maher then asked Mr. Leon L. Gildesgame to come down and tell him what he knew about the merchandise. Mr. Gildesgame stated that the goods were samples sent over by the English concern for the purpose of trying out the market and that he had no information about the prices. Mr. Maher then returned the submission sheet with figures double the invoice prices.

In connection with the merchandise in the instant case, Mr. Gildesgame stated that at the time of entry he had no information of any prices other than the invoice prices and that he instructed Mr. Taub to file a request for information with the appraiser. Mr. Taub stated that he sent a submission sheet to the appraiser on September 26, 1945, and the same was returned with the notation "Ascertain from shipper the correct foreign or export value." (Petitioner's exhibit 2.) Mr. Taub instructed Mr. Gildesgame to obtain information as to market value from the shipper, but made entry on the basis of the invoice prices. Mr. Gildesgame testified that he then had a conversation with Mr. Maher in regard to the instant merchandise in which he stated that sample goods were usually invoiced at a discount of anything between 15 percent and 50 percent. Mr. Maher stated, however, that the only conversation he had personally with Mr. Gildesgame was in connection with the baggage entry and that the conversation with regard to this entry was over the telephone. In any event, there was admitted into evidence as petitioner's exhibit 1, a copy of a letter from Mr. Gildesgame to Mr. Maher, dated October 5, 1945, containing the following statements:

This is to confirm the conversation we had today over the telephone regarding the Rima samples of ladies outerwear.

These samples were sent to us from England with a view to trying out the market in the U. S. A., as to sales, finish, and fabric. * * * The manufacturers in England cannot commit themselves as to final prices now, but should we find any of the samples salable in this market as is, we will then cable or write asking for final prices and delivery dates. These will again be submitted to the prospective customer and we will then know whether the item in question is salable at the prices demanded, to which we shall have to add a commission or some other margin to cover us for our trouble and time.

Thereafter, on October 8, 1945, and on October 18, 1945, Mr. Gildesgame wrote to Sidney Krieger of the English firm asking whether the invoice prices represented the actual cost or whether they were arrived at after a sample allowance had been given. (Petitioner's exhibits 3 and 4.)

At some time thereafter, Mr. Gildesgame had a telephone conversation with his brother, Mr. Pierre Gildesgame, who was then in Canada, and Mr. Pierre Gildesgame stated that the invoice prices included a sample discount of 50 percent. There was admitted in evidence as petitioner's exhibit 6 a letter dated October 18, 1945, from Mr. Leon L. Gildesgame to Taub, Hummel & Schnall, Inc., which states:

We are advised by Gildesgame Bros. Ltd. of England that the invoice #7 covering this shipment of samples was made out with a reduction of 50%, as an allow-

ance to us by them. In other words, these goods which are invoiced at a total of £44.7.3 actually cost them double that amount.

In view of this, we think it would be correct to advise the Appraiser Stores accordingly, in case they should decide that the duty is payable on the total cost of these samples to Gildesgame Brothers Ltd.

Mr. Taub stated that he submitted this letter to Mr. Maher the day he received it and that the following notations thereon were in his handwriting:

. Letter handed to examiner James Maher October 19th by R. W. S.

Letter returned by James Maher Dec. 4th via R. W. S.

Copy of this letter handed to James Maher Dec. 5th by R. W. S.

In the meantime, about October 8 or 9, Mr. Maher had sent the matter to the Customs Agents for investigation. Their report, dated November 1, stated, according to Mr. Maher, that no violation of section 592 of the tariff act was involved.

There was also admitted into evidence as petitioner's exhibit 5 a photostatic copy of a letter from Gildesgame Bros. Ltd., dated October 26, 1945, which contains the following statement:

We are in receipt of your letter of the 8th inst., and would like to point out that all invoices for samples are quoted at actual manufacturers prices to us less a special 50% discount for samples.

Mr. Taub stated that he could have amended the entry on the basis of the information contained in the letter dated October 18, 1945 (petitioner's exhibit 6), but that it was his practice, when any matter is under investigation, not to amend until the information he has is brought to the attention of the appraiser. He also testified that Mr. Maher asked for the resubmission of the information sheet and Mr. Taub was under the impression that he was going to give him new prices, so no amendment was made. Mr. Maher did not recall asking for a resubmission but stated that his clerk may have done so. According to Mr. Taub, the submission sheet was returned to him two days after Mr. Maher had advanced the values and that no opportunity to amend was given. Mr. Maher stated that in November, after talking the matter over with the assistant appraiser, he decided he would not permit the importer to amend, and advanced the values.

Mr. Gildesgame testified further that he gave the appraiser all the information he had as to values as soon as he received it and that he did not intend to deceive the appraiser or defraud the revenue.

The record herein shows that the petitioner herein knew of no values other than the invoice values at the time of entry and that he cooperated with customs officials by forwarding information as soon as he obtained it. We find that the petitioner, in making entry in this case, acted without intention to misrepresent the facts or to defraud the revenue of the United States or to deceive the appraiser as to the value of the goods. The petition is granted. Judgment will be rendered accordingly.